*In re* CAMP, (three cases.)

*(Supreme Court, General Term, Second Department.  May 12, 1890.)*

1. GUARDIAN AND WARD—ACCOUNTING—LIMITATION OF ACTION.
    Lapse of time since the majority of a ward will not bar a petition to compel the guardian to account, when the guardian has kept the fund separate from his own property, and has never informed the ward of its existence, and has in no way re-pudiated or denied the trust.  Affirming 3 N. Y. Supp. 335.

2. SAME—ESTOPPEL TO DENY.
    A father was appointed general guardian of his children to enable him to obtain the amount of an award in proceedings to condemn land owned by their mother at the time of her death, and he received the money in pursuance of the appointment, and receipted therefor as guardian.  *Held* that, if he had or claimed any personal interest in the fund so received by him, it was his duty to have at once asserted it; and, having failed to do so, he could not, after the fund had been converted to his own use, and lost, set up an adverse claim to any portion of the money in contra vention of his trust.

3. RESULTING TRUST—CONVEYANCE BY HUSBAND TO WIFE.
    No trust results to a husband from his conveyance of land to his wife as a cover.

Appeal from surrogate's court, Kings county.

Petitions severally by William C. Camp, Mary Ella Camp, and Julia A. Tebbetts, wards of Calvin B. Camp, for an accounting.  Both parties appeal from the decree.  For former report, see 3 N. Y. Supp. 335.

Argued before BARNARD, P. J., and DYKMAN and PRATT, JJ.

*Jennings & Russell,* (*Joseph H. Choate,* of counsel,) for petitioners.  *W. C. Beecher,* for defendant.

DYKMAN, J.  This was a proceeding to procure an accounting by the guard-ian of the petitioner, and other children of the respondent, Calvin B. Camp. The facts set up by the petition were not denied in any material respect, and the following facts can be gathered therefrom.  The mother of the peti-tioner, and the wife of Calvin B. Camp, died intestate on the 25th day of Oc-tober, 1866, seised and possessed of certain real estate in the city of Brooklyn, leaving, her surviving, Calvin B. Camp, her husband, James B. Camp, Will-iam C. Camp, Julia Adelaide Camp, and Mary Ella Camp, her only children and heirs at law.  James B. Camp afterwards died intestate, unmarried, and without children.  Prior to the death of the mother of the petitioners, pro-ceedings had been taken by the city of Brooklyn to condemn one of the lots owned by her; and such proceedings were pending at the time of her death, and subsequently resulted in an award to the petitioner, and his brother and sisters, of $26,000 for their interest in the real estate so taken.  At the time of such award the petitioner, and his brother and sisters, were minors; and Calvin B. Camp, in order to enable him to obtain the amount of said award, was appointed general guardian of the petitioner, and his brother and sisters, by separate proceedings in the surrogate's court, on the 17th day of February, 1868.  Under and by virtue of such appointment as guardian, Calvin B. Camp received from the comptroller of the city of New York the sum of $26,000 on the 18th day of February, 1868, being the amount of such award, one-quarter

of which belonged to the petitioner. The comptroller's warrant was drawn to Mr. Camp as general guardian, and he receipted for the same in that capacity. Prior to the commencement of these proceedings, no inventory had been filed, and no portion of the sum received had been paid over to the petitioner by his guardian; and the petitioner had learned the facts only within a short time prior to the institution .of these proceedings. Subsequently, and under the decision of the general term of the supreme court, (3 N. Y. Supp. 335,) the guardian filed his account in this proceeding as general guardian of the petitioner, in which the guardian acknowledged the receipt of the $26,000 in question, and made no attempt to set up specific items claimed to have been paid upon account of the petitioner, or his brothers and sisters, out of the said sum received by him as their guardian; but 'he did claim as an offset against his liability as such guardian certain sums therein stated to have been paid by him towards their support. The petitioner filed objections to such account, and the matter was referred by the surrogate to a referee, to examine the account, and determine the questions arising upon the settlement, and report thereon to the surrogate. Upon the hearing before the referee, it was admitted that the sum of $26,000 had been received by Mr. Camp as the general guardian of his four children; and that he had never accounted for the same; and the questions before the referee related to the validity of the several items of expenses charged against the said trust fund in his account. The facts as we have stated them were substantially admitted by the guardian before the referee, and were not materially changed or modified by the testimony there taken. The referee, while holding that the guardian became liable to account for the fund so received by him as such guardian, further held and decided that he would have been entitled to a life-interest in the fund when he received it, and was entitled to credit for the value of such life-interest at the time, and was liable only for the value of the remainder at that time, with interest thereon; and he directed judgment for the petitioners accordingly. The report was confirmed by the surrogate, and an appeal was taken from the decree, by the guardian, to the general term. The petitioner also appealed from that portion of the decree which limited the recovery of the petitioners, and allowed the guardian for his life-interest in the fund.

The points relied upon by the guardian upon this appeal are: *First*. The statute of limitations. *Second*. The fact that the property which was taken by the city did not actually belong to his wife, but had been conveyed to her as a cover, and was held by her as trustee for himself, and that, therefore, the whole of the award made by the commissioners belonged to him, and his children had no interest therein. *Third*. That the guardian, as tenant by the curtesy, had a life-estate in the $26,000 paid, and could not become liable therefor until after his death.

The first point, respecting the statute of limitations, has already been presented to this court, and decided against the guardian, in these same proceedings. 3 N. Y. Supp. 335.

.In respect to the second point, it is sufficient to say that the guardian cannot now be heard to question the legal title of his wife, even assuming the facts claimed by him to be true, of which there is no proof, the testimony offered in proof of that allegation having been properly rejected by the referee; and, even if the fact was as the guardian now claims, no trust resulted to him from such a conveyance.

Upon this appeal, therefore, and the appeal of the petitioner, we have to consider the claim of the guardian to a life-estate in the fund received by him from the city of Brooklyn. Upon all the facts in this case, the only legitimate conclusion to be reached is that the entire sum in question was awarded to the children of the guardian as compensation for their damages in the condemnation proceedings, and belonged absolutely to them. The award was made to the petitioner, and his brothers and sisters. The comptroller's war-

rant was drawn to Mr. Camp, the general guardian, and he received the same, and gave a written acknowledgment therefor as such guardian. He was appointed the general guardian for the purpose of receiving the money. He did receive the same the next day, in pursuance of such appointment; and his present claim is entirely inconsistent with his conduct from the time of his appointment as such guardian down to the time of the rendition of his account in pursuance of the judgment of this court. If this guardian had, or claimed to have, any personal interest in the fund so received by him adverse to his interest as the guardian and trustee of his children, it became his duty at once, upon the receipt of the fund, to assert such interest, and have it adjusted and set apart to them; but he never in any way asserted any claim to a personal interest in the fund until after it had been converted to his own use, and lost. He occupied a place of trust and confidence, received the fund in the capacity of a trustee, and he should not now, at this late day, be permitted to set up an adverse claim to any portion of the money in contravention of his trust. The referee should have found in favor of the petitioner in each of the proceedings for the full amount of $6,500, with interest; and the decree should be modified by increasing the amount to $25,000, instead of the amount so reported due by the referee, and as so modified the decree should be affirmed, with costs. All concur.