## BELLINGER v. POTTER.

(*Supreme Court, General Term, Fourth Department.* February, 1891.)

1. EXECUTORS AND ADMINISTRATORS—ACCOUNTING.
    Testator declared in his will that he had conveyed his farm, valued at $6,400, to his son G., and that he intended it as a bequest of $5,000 to G., "leaving in his [G.'s] hands the sum of $1,400, for the use of which the said G. agreed to pay the yearly sum of $70 during the life of the undersigned testator. Testator further provided that, in case G. should sell the farm, $1,000 of the $1,400 should be paid to testator, should he demand it, but, if not demanded or paid in testator's life-time, then to such of his children as should care for him in his last illness, and that the remaining $400 should be paid to G.'s wife. G. was executor of the will, and the inventory filed by him showed a demand against himself for $1,426.59, "for part price of farm conveyed to him by testator." G. sold the farm after testator's death, and paid the $1,000 to testator's daughter L., who cared for him in his last illness. *Held*, that G. was bound by the statement in the inventory, and that it was error to allow him from the general estate the $1,000 so paid by him to L.

2. SAME.
    Where a mortgage specifically bequeathed is used by the executor, with the consent of the legatee, in paying debts of the estate, and it does not appear that the legacy was waived or abandoned by the legatee in favor of the estate, the executor is not chargeable with the amount of the mortgage, in an action by a general legatee for her legacy.

Appeal from judgment on report of referee.

Action by Jennie V. Bellinger, as administratrix of Betsey D. Bellinger, deceased, against George B. Potter, as executor, etc., of George Potter, deceased, for a legacy of $4,000, given to plaintiff's intestate, Betsey D. Bellinger, in the will of George Potter, who died April 26, 1869. The will was proved, and letters testamentary issued to the defendant, on May 25, 1869. The executor has never had a judicial accounting except in this action. The legatee, Betsey D. Bellinger, died August 6, 1885, and letters of administration were issued to the plaintiff on the 7th March, 1869. This suit was commenced soon after. The referee found that on the 17th October, 1871, the defendant, by the consent and direction of the legatee, transferred to Nathan Bellinger, the husband of the legatee, a mortgage of $1,980 on account of her said legacy. He also found that, upon a statement of the account of the executor, there was only the sum of $834.73 properly applicable to the payment of general legacies, and that of this sum $830.47 was the *pro rata* amount applicable on the legacy of plaintiff's intestate; so that therefore the legatee was in her life-time largely overpaid. Plaintiff appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.
E. O. Worden, for appellant. J. S. Baker, for respondent.

MERWIN, J. The evidence is sufficient to sustain the finding of the payment of $1,980 upon the legacy. The claim, however, of the plaintiff is that numerous errors to her prejudice were made by the referee in stating the executor's account. In the will, which is dated June 1, 1868, there is the following clause: "*Third.* Having deeded to my son George B. Potter the homestead farm, containing one hundred and twenty-eight acres of land, said deed bearing date the 5th day of February, 1868, and said premises being valued at the sum of six thousand four hundred dollars, and the amount intended as a bequest being five thousand dollars to the said George B. Potter, leaving in his hands the sum of one thousand four hundred dollars, for the use of which the said Geo. B. Potter agreed to pay the yearly sum of seventy dollars during the life of the undersigned testator, or, if he sold said premises during the life of said testator, then, in case of demand of said testator, he was to pay the sum of one thousand dollars to him. If this sum of one thousand dollars is not demanded or paid in my life-time, then it is my will and wish that in case I should be cared for in my last sickness by either of my other children, and my funeral expenses borne and paid by them, they shall receive the said sum of one thousand dollars; but, should the said Geo. B. Potter care for me in my last sickness, and pay funeral expenses, etc., then he is to keep in possession the same; and, further, I give and bequeath to Frances Potter, wife of the said Geo. B. Potter, the above referred to four hundred dollars, to be paid her by the said Geo. B. Potter." In the inventory of the estate which was made by the defendant, and filed in the surrogate's office on October 5, 1869, there is the following item:

"Demand against George B. Potter, the executor, for part price of farm conveyed to him by testator in his life-time, $1,400 00
Interest on $1,000 from February 5, 1869, to date of inventory,          -          -          -          -          -          -          -          26 59

Due and collectible,          -          -          -          -          - $1,426 59"

At the trial, the defendant put in evidence a paper which, as he testified, without objection, was executed by him at the same time as the deed, and of which the following is a copy: "Whereas, George Potter has this day deeded to me 128 acres of land, & whereas said conveyance was made in consideration of an amount less than expressed in said deed of conveyance: Therefore be it known that I, G. B. Potter, do obligate myself, in consideration of said conveyance, to pay to the said George Potter the sum of $70 per year, during the term of his natural life; but, if the said George Potter should see fit to come and live with me, then I am not to pay said $70 such years as he may do the same. And I do further agree that in case I should sell said premises, and the said George Potter would prefer the payment of $1,000 in lieu of the aforementioned sum of $70 per year, to pay the same on demand; but, in case of the payment of the said sum of $1,000, then the payment of the yearly sum of $70 is to cease. Dated this 5th day of Feb'y, 1868. G. B. POTTER. [Seal.] In presence of G. W. DAVIS." It appears that the deed referred to was dated February 5, 1868, and the consideration expressed therein was $5,000. What was done with the paper signed by defendant after its execution does not appear. The $1,000 was not demanded in the life-time of the testator, nor was the farm sold until after his death. The referee held that the defendant was not chargeable with the item of $1,426.59, and should be credited with the sum of $1,000, which he paid to Lura A. Spink, one of the children of the testator, for care of him during his last sickness, and his funeral expenses. This payment was allowed, upon the theory that the intent of the testator was to have this paid in any event, although the fund specifically referred to may have failed.

Assuming that the item of $1,426.59 was a valid debt against the defendant, the plaintiff would not be entitled to any benefit from it, as it was specifically appropriated by the will; but in that case the defendant would not be entitled to credit from the estate generally for the $1,000 which he paid for care. It therefore becomes material to determine whether defendant is bound by the item as entered in the inventory. The circumstances under which the inventory was made do not appear. We must therefore assume it was purposely made as it was, and with a full understanding of its contents. The claim of the testator as shown by the will was known to the executor, and was yielded to. It is not made clear that the paper signed by the defendant contained the entire agreement. The testator evidently understood that there was at least $1,000 in the defendant's hands. I am of the opinion that the strong presumption furnished by the inventory is not overcome, and that the referee erred in allowing the defendant from the general estate the amount he paid for care. See *In re Camp*, 10 N. Y. Supp. 141.

The plaintiff further claims that the defendant should have been charged with the amount of a mortgage given by John Spink for $1,000. This was specifically bequeathed by the testator to Lura Ann Spink, the wife of John Spink, and appears to have been transferred to one Mace by the defendant, and the proceeds or a portion thereof used in payment of debts against the estate. It is quite evident that this was done with the consent of Mrs. Spink and her husband. The latter had a portion of the proceeds. Under what arrangement the transfer was made it does not appear. There is nothing to show that the legacy was waived or abandoned by the legatee for the benefit of the estate. If the defendant used it, presumptively he has accounted, or is bound to account, to Mrs. Spink for it. The plaintiff has no claim on it.

The plaintiff claims that the defendant should be charged in his account with another mortgage against John Spink for $203.48. The case shows that he was so charged, but was credited back with the sum of $43.66, which Spink paid on the notes given by the testator when he purchased the mortgage, thus reducing the amount for which the estate could properly hold the mortgage against Spink. It, in effect, was the same as if Spink had paid that amount to the prior holder of the mortgage.

The defendant is credited with $270.80 for uncollected debts in the inventory. No error is made apparent as to this, especially in view of the provision of section 1833 of the Code of Civil Procedure, that in an action like this an executor shall not be charged with a demand or right of action included in the inventory, unless it appears that the same had been collected, or might have been collected, with due diligence.

The plaintiff further claims that in several instances the referee has allowed the defendant payments on debts which in whole or in part were not justified by the evidence. It has been held that the verified accounts of an executor, with vouchers for the payments made, raise the presumption that the payments were properly made, and that the burden of impeaching the payments is then on the party objecting. *Metzger* v. *Metzger*, 1 Bradf. Sur. 265; *Bainbridge* v. *McCullough*, 1 Hun, 488. In view of this rule, we find no substantial ground for the plaintiff to complain except in the case of the debt of N. B. Foot & Co., which the referee allowed at $2,657.86. A voucher for this sum was produced by the defendant upon an account in form against the estate. This account seems to have been mainly for goods sold by Foot & Co. to John Spink, as agent for the deceased in running a store, and of indebtedness of Spink assumed by the deceased in connection with the purchase of the store. There was no question as to Spink's agency. Mr. Foot testified that the books of his firm showed charges against John Spink as agent after April 25, 1869, of a total of $1,340.55, and that the payments, making up the total of $2,657.86, paid those charges in full. The argument of the plaintiff is that the credit to defendant should be lessened by the sum of $1,340.55. It is

shown that in the amount of $1,340.55 there is only one item of merchandise after April 25th, and that is May 4, 1869, $130.81. It is not shown that any other item arose after Mr. Potter's death. On the contrary, the inference from the evidence is that the other items making up the balance of the $1,340.55 were items carried along upon the books of Foot & Co. and arising from the business which Spink conducted as agent for the deceased, or were debts of Spink assumed by the deceased. It follows that in this transaction there should be a deduction of $130.81 from the defendant's credit, but no further. The foregoing considerations would require that the credits to the defendant should be lessened by the sum of $1,130.81; so that the defendant, instead of having in his hands, applicable to the payment of general legacies, the sum of $834.73, as found by the referee, would have the sum of $1,965.54, of which about the sum of $1,956 would be applicable on the $4,000 legacy. This being less than the legatee in fact received, nothing would be due the plaintiff.

Several rulings of the referee upon evidence are challenged by the appellant. Among others, it is claimed that error was committed in allowing Clark Mace to state conversations that he had with Betsey D. Bellinger in relation to payments made to her from her father's estate. The objection was that Mace was incompetent to testify as to those conversations, under section 829 of the Code of Civil Procedure, by reason of his interest under the will in a legacy given to him and his wife. That legacy was a specific one, and cannot be reached or affected by the subsequent general legacy to Mrs. Bellinger. Mace is not a party to the action, and is not interested in the event, within the rule laid down on that subject. *Hobart* v. *Hobart*, 62 N. Y. 83. It is not necessary to consider the other rulings in detail. There are none that furnish a good reason for reversal. The judgment should be affirmed, with costs. All concur.